### RICH–SAMPLINER CO. et al. v. ENSTEN.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1923. Rehearing Denied October 4, 1923.)

No. 3776.

Patents ⬅️328—1,313,080, for knitted cap, held valid and infringed.
    The Ensten patent, No. 1,313,080, for a knitted cap, claim 1, *held* valid, and claims 3, 4, and 5 also valid, as limited by the description in the specification, and such claims all infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by Louis H. Ensten against the Rich-Sampliner Company and the Rose Knit Goods Company. Decree for complainant, and defendants appeal. Affirmed.

Albert Lynn Lawrence, of Cleveland, Ohio, for appellants.
Harold Elno Smith, of Cleveland, Ohio, for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. This appeal involves the question of the validity, and, if valid, the question of infringement, of claims 1, 3, 4, and 5 of United States letters patent No. 1,313,080, issued to Louis H. Ensten, August 12, 1919, on an application filed by him April 30, 1919. This patent pertains to knitted caps; the object of the claimed invention being to provide a knitted cap which will fit the head snugly and cover the ears and back of the neck, and conform at its edge all around the cap to the exact contour of the neck, jaws, and forehead of the wearer, and to hold its shape under elastic tension, especially at the hollow places beneath the ear and behind the pivot bones of the jaw. The claims in suit read as follows:

1. A knitted cap having triangular areas projecting downwardly at each side thereof and possessing an inherent tension adapted to provide a hugging fit at their tips when the cap is worn upon the head.

---
⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. A knitted cap, comprising diagonally related rows of knitting subdivided into sections of different width forming a relatively small peak centrally at the front of the cap and relatively larger triangular areas and depending portions at each side of the cap.

4. A knitted cap, comprising diagonally related rows of knitting at successive intervals, forming a pair of large triangular areas at one border edge of the cap, and providing a plural number of irregular angular areas at its opposite border edge; the edges of the irregular angular areas being sewed together and forming seams at the top of the cap.

5. A knitted cap, comprising a flat strip of knitted goods formed with selvages of angular formation, the transverse end edges of the strip and the adjacent angular edges of one of the selvages being sewed together to form the top of the cap, and the other selvage forming a centrally located front peak and a pair of relatively large triangular earlaps.

The bill of complaint charges the Rich-Sampliner Company with manufacturing, and the Rose Knit Goods Company with selling, a cap that infringes the claims of the Ensten patent. The defendants interposed the defenses of invalidity and noninfringement. Upon the issues joined the District Court found all of the claims in issue valid and infringed. The defendants appealed.

The cap of the patent in suit is made from a swatch, in flat form, knitted as hereinafter described. The ends of this swatch are sewed together, and the selvages of one margin also gathered and sewed without cutting, forming in this way an ovate, head-fitting cap having two large and one small depending points, the two larger points registering with the ears of the wearer. This cap was put upon the market about May, 1919, under the trade-name of "The Ace," and about Christmas time of that year it was being sold by about 700 retail dealers and met with popular favor, especially among college students.

Knitted caps are old in the art, and it is also old in the art to knit the swatches from which these caps are made in flat form, with the knitted rows in zigzag fashion, so that in the successive areas of the strip or swatch these rows will be diagonally related with a selvage at each side and triangular edge areas. The Ensten swatch differs from the swatch of the prior art, in that the triangular edge areas are of different sizes successively in the strip. This result is obtained by knitting broad and narrow rows successively.

While all knitted goods are elastic, nevertheless it is contended that the swatch of the Ensten patent and the shape and the method of constructing the Ensten cap utilizes, for the first time in the history of the art, the elasticity inherent in the material as a means of holding the tips of the triangular areas or ear flaps snugly beneath the ears and the hollow behind the pivot bones of the jaw of the wearer, thereby preventing these tips from depending loosely and with unsightly effect, or in holding these triangular flaps tightly and snugly against the outer side of the head portion of the cap and in conformity with the wearer's head, when they are turned up and above the wearer's ears.

If the manner of knitting this swatch, the shape and method of construction of the Ensten cap, produce these results, then beyond question it is an advance over the prior art and involves invention. That it does produce these results is evidenced, not only by the cap

itself, but also by the fact that it met such immediate public favor that appellant procured one of the caps of the Ensten patent and copied it in every detail. It is unnecessary to review at length the prior patent art. It is sufficient to say that nothing appears therein that anticipates the particular feature of the Ensten cap that is claimed to be invention.

The Henry cap is undoubtedly the nearest approach to the cap in suit. It is not a part of the prior patent art, and the District Court properly held that the evidence of prior public use of the Henry cap was not sufficiently clear and definite to defeat the Ensten patent. On December 27, 1910, Henry made application for a patent, which was allowed May 18, 1914; but he failed to pay the final government fee, and the patent was never issued.

Without deciding whether the Henry application, as disclosed by this record, is so far within the principle of Brown v. Guild and Brown v. Selby, 90 U. S. (23 Wall.) 181, 23 L. Ed. 161, that it can have no bearing on the question of prior invention or discovery, such bearing, if any, must necessarily be confined to the disclosures therein named. From these disclosures it is apparent that Henry did not contemplate utilizing the inherent tension of the elastic fabric as a means of holding the triangular areas or ear flaps in place when turned either up or down, but instead thereof he specifically provides for holding these flaps in position when covering the ears or when turned upward against the body portion of the cap by a connecting strap of the same material, one end of which is permanently fastened to the point of one of these triangular areas, and the other end temporarily connected by a fastener to the opposing point.

There is not a line in the Henry application that even suggests this Ensten concept. On the contrary, Henry specifies as part of his cap the identical features that Ensten seeks to avoid. So far as Henry's application is concerned, it imparts no information whatever that would disclose the Ensten idea. But for Ensten the invention would have been wholly lost to the public. For this reason we are of the opinion that the Henry application fails to establish the defense of priority of invention.

Nor does the Henry cap itself establish such priority. In Coffin v. Odgen, 85 U. S. (18 Wall.) 120, 21 L. Ed. 821, it was held that the structure relied upon to establish priority of invention must have been "complete and capable of producing what was sought to be accomplished," and that "the conception must have been clothed in substantial form, which demonstrates at once its practical efficacy and utility." It is sufficient to say that the Henry cap not only fails to demonstrate its practical efficacy and utility, in so far as the Ensten idea is concerned, but, on the contrary, it is so constructed as to conceal any inherent qualities it may possibly possess in common with the Ensten cap. It follows that the doctrine announced in Buser v. Novelty Tufting Co., 151 Fed. 478, 81 C. C. A. 16, has no application to this case.

For this reason the question of the effect of Henry's abandonment of his application for a patent is wholly unimportant. Claim 1 specifically covers in terms these new and novel features and is valid.

Claims 3, 4, and 5, if construed broadly, without reference to the description in the patent, would be invalid; but they are clearly entitled to be narrowly construed as limited by the description of the claimed invention, and when so construed are valid.

Upon the question of infringement there can be but little doubt. The Rich-Sampliner Company procured one of Ensten's "Ace" caps and with considerable effort reproduced it in exact detail as manufactured under the Ensten patent. The cap so manufactured by the Rich-Sampliner Company was known in its factory as "The Ace," but it was not marketed under that name. It was marketed, however, in competition with the Ensten cap and at a substantially lower price. It is claimed on behalf of the appellants that "The Ace" cap of the Ensten patent did not involve the patentable features of the Ensten invention covered by claim 6 of the Ensten patent, which is not here in suit, for the reason that the tip or ends of the depending areas forming the ear laps were not severed or cut away at a point where the selvage meets the end edges, and for that reason the "Ace" cap was not protected by the Ensten patent, and the reproduction thereof by the Rich-Sampliner Company was not infringement.

On the other hand, it is contended that this feature of the Ensten patent is not essential, but merely supplemental, and that the "Ace" cap as constructed involves the inventive ideas covered by the patent and produces the tension effect contemplated, which tension effect can be slightly increased by clipping off small portions of the corner of the swatch as described in the patent and covered by claim 6. The evidence fully sustains this claim of the appellee. The "Ace" cap as constructed under the Ensten patent is in accordance with the teaching of that patent in all respects, save and except as to claim 6, and is fully covered by claim 1, and by claims 3, 4, and 5 as narrowly construed in accordance with the inventor's description.

For the reason stated, the judgment of the District Court is affirmed.